PJM/KOG: USAO 2017R00129

FILED
U.S. DISTRICT COURT
DISTRICT OF MARYLAND

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
(Northern Division)
AT BALTIMORE

CLERK

BY_____ DEPUTY

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | * | UNDER SEAL |
| | * | |
| v. | * | CRIMINAL NO. CLR-19-15 |
| | * | |
| WILLIAM FRANCIS HICKEY III, | * | (Conspiracy to Commit Wire Fraud, 18 |
| | * | U.S.C. § 1349; Wire Fraud, 18 U.S.C. § |
| | * | 1343; Aiding and Abetting, 18 U.S.C. § |
| Defendant. | * | 2; Forfeiture, 18 U.S.C. §§ 982(a)(1), |
| | * | (a)(2)(A)) |
| | * | |

*******

## INDICTMENT

## COUNT ONE
### (Conspiracy to Commit Wire Fraud)

The Grand Jury for the District of Maryland charges that:

### Introduction: Relevant Persons and Entities

At all times relevant to this Indictment, unless otherwise stated:

1.      Defendant William Francis **HICKEY** was a resident of Elkton, Maryland.

2.      **HICKEY** was the managing member of Hickey Consulting LLC and the president of Latino Consulting LLC.   Both businesses were located in Baltimore, Maryland.

3.      **HICKEY** maintained four bank accounts with Wells Fargo Bank, in the name of Hickey Consulting LLC, with account numbers ending in 2690, 4507, 4861, and 4887. **HICKEY** opened these accounts on March 7, 2017.

4.      **HICKEY** maintained a bank account with Wells Fargo Bank, in the name of Latino Consulting LLC, with account number ending in 9036.   **HICKEY** opened this account on April 9, 2016.

**Background: Transportation of Goods by Logistical Brokers and Trucking Companies**

5.      In the trucking industry, brokers, or logistical brokers, are companies or individuals that are hired by shippers of goods to arrange for transportation of the goods by trucking companies.   When a broker is hired by a shipper, it typically uses one of several Internet-based "load boards" to solicit bids from trucking companies that are available and willing to transport a particular load.

6.      When a trucking company bids on a load, it typically provides the broker with contact information, such as an email address and telephone number, as well as proof of insurance, W-9, and Department of Transportation licensing forms.   If a trucking company wins a bid, it is hired by the broker to transport a load to a particular destination at a particular time.

7.      Brokers pay trucking companies for transporting loads by issuing "truck industry checks," including Comdata, EFS, T-Check, and/or Fleet Over the Road checks.   Trucking companies and their drivers typically possess books containing blank versions of these checks. After a broker hires a trucking company to transport a particular load, it will make payment to the trucking company in two steps.

8.      First, after the trucking company has picked up a load, the broker makes a "fuel advance" payment to the trucking company.   The broker makes this payment by providing a numerical code, referred to in the trucking industry as an "express code," which the trucking company uses to populate a blank check from its book of truck industry checks.   The check can be deposited into a bank account or cashed at a truck stop or check-cashing establishment.

9.      Second, after the trucking company has delivered the load, the broker makes a final payment by providing the trucking company with a second express code, which the

2

trucking company uses to populate another truck industry check, which it subsequently cashes or deposits, as described above.

## The Conspiracy

10. From in or about May 2016 to the present, in the District of Maryland and elsewhere, the defendant,

## WILLIAM FRANCIS HICKEY III,

did knowingly and willfully conspire, confederate and agree with persons known and unknown to the grand jury to commit wire fraud, in violation of 18 U.S.C. § 1343, that is to knowingly and willfully devise and execute, and attempt to devise and execute, a scheme and artifice to defraud logistical brokers and trucking companies, and to obtain money and property by means of materially false and fraudulent pretenses, representations and promises, as set forth more specifically below.

## Object of the Conspiracy and Scheme to Defraud

11. It was the object of the conspiracy and scheme to defraud that members of the conspiracy obtained truck industry checks from brokers by posing as legitimate trucking companies; entering into agreements with the brokers to transport a load; re-brokering, or "double brokering," the same load to a real trucking company; and then seeking payment from the brokers for transportation services that they (*i.e.*, members of the conspiracy) had not in fact provided.

## Manner and Means of the Conspiracy and Scheme to Defraud

12. It was part of the conspiracy and scheme to defraud that members of the conspiracy made contact with brokers that were soliciting bids from trucking companies on

3

Internet load boards. When contacting brokers, members of the conspiracy held themselves out as legitimate trucking companies. They did so by providing the brokers with fraudulent documents, including fraudulent proof of insurance, W-9, and Department of Transportation licensing forms, as well as fraudulent email addresses and telephone numbers.

13.     It was further part of the conspiracy and scheme to defraud that when members of the conspiracy were hired by brokers to transport a particular load, they did not transport the load themselves. Instead, they "re-brokered," or "double brokered," the same load by posing as a legitimate broker and soliciting bids on an Internet load board from legitimate trucking companies that were willing to transport the load. When communicating with interested trucking companies, members of the conspiracy used fraudulent email addresses and telephone numbers. They then hired a legitimate trucking company to transport the load.

14.     It was further part of the conspiracy and scheme to defraud that after the legitimate trucking company had picked up the load, members of the conspiracy would contact the original broker, inform the broker that the load had been picked up, and request an express code for a fuel advance payment. They then used the express code to populate, and subsequently cash or deposit, a truck industry check. In some cases, members of the conspiracy also requested a second express code from the original broker after the load had been delivered, which they then used to populate, and subsequently cash or deposit, a second truck industry check.

15.     It was further part of the conspiracy and scheme to defraud that **HICKEY** cashed or deposited hundreds of truck industry checks with an aggregate value in excess of $250,000 using express codes provided by defrauded brokers. **HICKEY** deposited the truck industry

4

checks into all five Wells Fargo Bank accounts that he maintained in the name of Hickey Consulting LLC and Latino Consulting LLC.

16.     It was further part of the conspiracy and scheme to defraud that prior to depositing truck industry checks using express codes provided by defrauded brokers, **HICKEY** wrote Maryland driver's license numbers on the face of the checks that closely resembled but were not in fact his.

17.     It was further part of the conspiracy and scheme to defraud that **HICKEY** and his coconspirators obtained, through the false and fraudulent means described above, at least $250,000 from defrauded brokers throughout the United States, resulting in a loss to the brokers of at least that amount.

18 U.S.C. § 1349

5

## COUNT TWO
### (Wire Fraud)

18.     Paragraphs One through Nine and Eleven through Seventeen are hereby re-

alleged and incorporated by reference as though fully set forth herein.

19.     On or about the date listed below, in the District of Maryland and elsewhere,

### WILLIAM FRANCIS HICKEY III,

the defendant herein, for the purpose of executing and attempting to execute the aforesaid

scheme to defraud, transmitted and caused to be transmitted by means of wire communications

in interstate commerce certain writings, signs, signals, pictures, and sounds, namely:

| COUNT | DATE | DESCRIPTION | INTERSTATE COMMUNICATION |
|-------|------|-------------|--------------------------|
| 2 | 2/28/2018 | Image of a Comdata truck industry check, made payable to Bill **HICKEY** in the amount of $1,000, and deposited into the Latino Consulting LLC Wells Fargo account, with account number ending in 9036. | Baltimore, MD to Shoreview, MN |

18 U.S.C. § 1343
18 U.S.C. § 2

## FORFEITURE ALLEGATIONS

1.      Pursuant to 18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461(c), upon conviction of an offense in violation of 18 U.S.C. §§ 1349 and 1343 as alleged in Counts One and Two of the Indictment, the defendant,

### WILLIAM FRANCIS HICKEY III,

shall forfeit to the United States, any and all property, real or personal, that constitutes or that is derived from proceeds traceable to the charged offenses.   The property to be forfeited includes, but is not limited to, a money judgment in the amount of the total loss caused by the defendant's criminal conduct, which is at least $250,000.

2.      If any of the above-described forfeitable property, as a result of any act or omission of the defendant:

- cannot be located upon the exercise of due diligence;
- has been transferred, sold to, or deposited with a third party;
- has been placed beyond the jurisdiction of the Court;
- has been substantially diminished in value; or
- has been commingled with other property which cannot be divided without difficulty,

it is the intent of the United States, pursuant to 21 U.S.C. § 853(p), as incorporated by 28 U.S.C. § 2461(c), to seek forfeiture of any other substitute property of the defendant up to the value of the forfeitable property described above.

18 U.S.C. § 982(a)(1)
21 U.S.C. § 853
28 U.S.C. § 2461(c)
Fed. R. Crim. P. 32.2(a)

7

_Robert K. Hur_

ROBERT K. HUR
UNITED STATES ATTORNEY
FOR THE DISTRICT OF MARYLAND

A TRUE BILL

**SIGNATURE REDACTED**

Foreperson

Date:   January _10_, 2019