

8/23/19





**U.S. Department of Justice**

*United States Attorney*
*District of Maryland*

| | | |
|---|---|---|
| Peter J. Martinez<br>Assistant United States Attorney<br>Peter.Martinez@usdoj.gov | Suite 400<br>36 S. Charles Street<br>Baltimore, MD 21201 | DIRECT: 410-209-4984<br>MAIN: 410-209-4800<br>FAX: 410-962-3091 |

August 23, 2019

Paul Enzinna, Esq.
Ellerman Enzinna PLLC
1050 30th Street NW
Washington, DC 20007

___ FILED ___ ENTERED
___ LOGGED ___ RECEIVED

SEP 26 2019

AT BALTIMORE
CLERK U.S. DISTRICT COURT
DISTRICT OF MARYLAND
BY _____ DEPUTY
NM

Re: United States v. William Hickey
Criminal No. GLR-19-015

Dear Counsel:

This letter, together with the Sealed Supplement, confirms the plea agreement that has been offered to your client, William Hickey, by the United States Attorney's Office for the District of Maryland. If the Defendant accepts this offer, please have the Defendant execute it in the spaces provided below. If this offer has not been accepted by September 5, 2019, it will be deemed withdrawn. The terms of the agreement are as follows:

### Offense of Conviction

1. The Defendant agrees to plead guilty to Counts 1 and 2 of the Indictment, which charge the Defendant with conspiracy to commit wire fraud in violation of 18 U.S.C. § 1349 and wire fraud in violation of 18 U.S.C. § 1343. The Defendant admits that he is, in fact, guilty of these offenses and will so advise the Court.

### Elements of the Offenses

2. The elements of the offenses to which the Defendant has agreed to plead guilty, and which this Office would prove if the case went to trial, are as follows:

Count One – Conspiracy to Commit Wire Fraud:

   a. that during the time period alleged in the Indictment, two or more persons agreed to commit wire fraud, in violation of 18 U.S.C. § 1343; and

   b. that the Defendant knew the unlawful purpose of the agreement and willfully joined it.



### Count Two – Wire Fraud

    a. that during the time period alleged in the Indictment, there was a scheme or artifice to defraud or to obtain property or money by means of materially false or fraudulent pretenses, representations, or promises;

    b. that the Defendant knowingly and willfully participated in the scheme or artifice to defraud, with knowledge of its fraudulent nature and with the specific intent to defraud; and

    c. that in executing the scheme or artifice to defraud, the Defendant used or caused the use of interstate wire communications, as specified in the Indictment.

### Penalties

3. The maximum penalties provided by statute for the offenses to which the Defendant is pleading guilty are as follows:

| Count(s) | Statute | Minimum Prison | Maximum Prison | Supervised Release | Maximum Fine | Special Assessment |
|---|---|---|---|---|---|---|
| 1 & 2 | 18 USC §§ 1343, 1349 | Ineligible for probation | 20 years | 3 years | $250,000 or 2x the gross gain or loss | $100 per count |

    a. Prison: If the Court orders a term of imprisonment, the Bureau of Prisons shall have sole discretion to designate the institution at which it will be served.

    b. Supervised Release: If the Court orders a term of supervised release, and the Defendant violates the conditions of supervised release, the Court may order the Defendant returned to custody to serve a term of imprisonment as permitted by statute, followed by an additional term of supervised release.

    c. Restitution: The Court may order the Defendant to pay restitution pursuant to 18 U.S.C. §§ 3663, 3663A, and 3664.

    d. Payment: If a fine or restitution is imposed, it shall be payable immediately, unless the Court orders otherwise pursuant to 18 U.S.C. § 3572(d). The Defendant may be required to pay interest if the fine is not paid when due.

    e. Forfeiture: The Court may enter an order of forfeiture of assets directly traceable to the offense, substitute assets, and/or a money judgment equal to the value of the property subject to forfeiture.

    f. Collection of Debts: If the Court imposes a fine or restitution, this Office's Financial Litigation Unit will be responsible for collecting the debt. If the Court establishes a



schedule of payments, the Defendant agrees that: (1) the full amount of the fine or restitution is nonetheless due and owing immediately; (2) the schedule of payments is merely a minimum schedule of payments and not the only method, nor a limitation on the methods, available to the United States to enforce the judgment; and (3) the United States may fully employ all powers to collect on the total amount of the debt as provided by law. Until the debt is paid, the Defendant agrees to disclose all assets in which the Defendant has any interest or over which the Defendant exercises direct or indirect control. Until the money judgment is satisfied, the Defendant authorizes this Office to obtain a credit report in order to evaluate the Defendant's ability to pay, and to request and review the Defendant's federal and state income tax returns. The Defendant agrees to complete and sign a copy of IRS Form 8821 (relating to the voluntary disclosure of federal tax return information) and a financial statement in a form provided by this Office.

### Waiver of Rights

4. The Defendant understands that by entering into this agreement, the Defendant surrenders certain rights as outlined below:

a. If the Defendant had pleaded not guilty and persisted in that plea, the Defendant would have had the right to a speedy jury trial with the close assistance of competent counsel. That trial could be conducted by a judge, without a jury, if the Defendant, this Office, and the Court all agreed.

b. If the Defendant elected a jury trial, the jury would be composed of twelve individuals selected from the community. Counsel and the Defendant would have the opportunity to challenge prospective jurors who demonstrated bias or who were otherwise unqualified. They would also have the opportunity to strike a certain number of jurors peremptorily. All twelve jurors would have to agree unanimously before the Defendant could be found guilty of any count. The jury would be instructed that the Defendant was presumed to be innocent, and that presumption could be overcome only by proof beyond a reasonable doubt.

c. If the Defendant went to trial, the Government would have the burden of proving the Defendant guilty beyond a reasonable doubt. The Defendant would have the right to confront and cross-examine the Government's witnesses. The Defendant would not have to present any defense witnesses or evidence whatsoever. If the Defendant wanted to call witnesses in defense, however, the Defendant would have the subpoena power of the Court to compel the witnesses to attend.

d. The Defendant would have the right to testify in the Defendant's own defense if the Defendant so chose. The Defendant would also have the right to refuse to testify. If the Defendant chose not to testify, the Court could instruct the jury that they could not draw any adverse inference from the Defendant's decision not to testify.

e. If the Defendant were found guilty after a trial, the Defendant would have the right to appeal the verdict and the Court's pretrial and trial decisions on the admissibility of evidence to see if any errors were committed that would require a new trial or dismissal of the



charges. By pleading guilty, the Defendant knowingly gives up the right to appeal the verdict and the Court's decisions.

   f. By pleading guilty, the Defendant will be giving up all of these rights. By pleading guilty, the Defendant understands that the Defendant may have to answer the Court's questions both about the rights being given up and about the facts of the case. Any statements that the Defendant makes during such a hearing would not be admissible against the Defendant during a trial except in a criminal proceeding for perjury or false statement.

   g. If the Court accepts the Defendant's plea of guilty, the Defendant will be giving up the right to file and have the Court rule on pretrial motions, and there will be no further trial or proceeding of any kind in the above-referenced criminal case, and the Court will find the Defendant guilty.

   h. By pleading guilty, the Defendant will also be giving up certain valuable civil rights such as the right to vote, possess a firearm and to hold certain licenses.

## Advisory Sentencing Guidelines Apply

5. The Defendant understands that the Court will determine a sentencing guidelines range for this case pursuant to the Sentencing Reform Act of 1984 at 18 U.S.C. §§ 3551-3742 (excepting 18 U.S.C. §§ 3553(b)(1) and 3742(e)) and 28 U.S.C. §§ 991 through 998. The Defendant further understands that the Court will impose a sentence pursuant to the Sentencing Reform Act, as excised, and must take into account the advisory guidelines range in establishing a reasonable sentence.

## Factual and Advisory Guidelines Stipulation

6. This Office and the Defendant stipulate and agree to the Statement of Facts set forth in Attachment A, which is incorporated by reference herein.

   a. This Office and the Defendant further agree that the applicable base offense level for wire fraud is 7 pursuant to United States Sentencing Guidelines § 2B1.1(a)(1). Because the loss in this case is at least $1,171,314.11, the base offense level is increased by 14 levels pursuant to U.S.S.G. § 2B1.1(b)(1)(H).

   b. This Office and the Defendant further agree that pursuant to U.S.S.G. § 2B1.1(b)(10)(B), the Defendant's offense level should be increased by two levels because a substantial part of the fraudulent scheme was committed from outside the United States. The adjusted offense level is therefore 23, prior to any reductions.

   c. This Office does not oppose a two-level reduction in the Defendant's adjusted offense level pursuant to U.S.S.G. § 3E1.1(a), based upon the Defendant's apparent prompt recognition and affirmative acceptance of personal responsibility for the Defendant's criminal conduct. This Office agrees to make a motion pursuant to U.S.S.G. § 3E1.1(b) for an additional one-level decrease in recognition of the Defendant's timely notification of the



Defendant's intention to enter a plea of guilty. This Office may oppose any adjustment for acceptance of responsibility under U.S.S.G. § 3E1.1(a) and may decline to make a motion pursuant to U.S.S.G. § 3E1.1(b) if the Defendant: (i) fails to admit each and every item in the factual stipulation; (ii) denies involvement in the offense; (iii) gives conflicting statements about the Defendant's involvement in the offense; (iv) is untruthful with the Court, this Office, or the United States Probation Office; (v) obstructs or attempts to obstruct justice prior to sentencing; (vi) engages in any criminal conduct between the date of this agreement and the date of sentencing; (vii) attempts to withdraw the plea of guilty; or (viii) violates this agreement in any way.

7. There is no agreement as to the Defendant's criminal history and the Defendant understands that the Defendant's criminal history could alter the Defendant's offense level. Specifically, the Defendant understands that the Defendant's criminal history could alter the final offense level if the Defendant is determined to be a career offender or if the instant offense was a part of a pattern of criminal conduct from which the Defendant derived a substantial portion of the Defendant's income.

8. Other than as set forth above, no other offense characteristics, sentencing guidelines factors, potential departures or adjustments set forth in the United States Sentencing Guidelines are in dispute or will be raised in calculating the advisory guidelines range. The Defendant agrees to provide notice to the Court, the United States Probation Officer and government counsel at least ten days in advance of sentencing of any facts or issues he intends to raise pursuant to 18 U.S.C. § 3553(a).

## Obligations of the Parties

9. At the time of sentencing, this Office and the Defendant reserve the right to advocate for a reasonable sentence and period of supervised release taking into account the guideline calculation and any appropriate factors under 18 U.S.C. § 3553(a). This Office will request an order of restitution to the victims of the fraudulent scheme in which the Defendant participated, as well as an order of forfeiture, as set forth below. In light of these financial penalties, this Office will recommend that the Court not impose a criminal fine. This Office and the Defendant reserve the right to bring to the Court's attention all information concerning the Defendant's background, character, and conduct that this Office or the Defendant deem relevant to sentencing.

## Waiver of Appeal

10. In exchange for the concessions made by this Office and the Defendant in this agreement, this Office and the Defendant waive their rights to appeal as follows:

a. The Defendant knowingly waives all right, pursuant to 28 U.S.C. § 1291 or any other statute or constitutional provision, to appeal the Defendant's conviction on any ground whatsoever. This includes a waiver of all right to appeal the Defendant's conviction on the ground that the statutes setting forth the offense to which the Defendant is pleading guilty are unconstitutional, or on the ground that the admitted conduct does not fall within the scope of the statutes, to the extent that such challenges legally can be waived.



b. The Defendant and this Office knowingly and expressly waive all rights conferred by 18 U.S.C. § 3742 to appeal whatever sentence is imposed (including any term of imprisonment, fine, term of supervised release, or order of restitution) for any reason (including the establishment of the advisory sentencing guidelines range, the determination of the Defendant's criminal history, the weighing of the sentencing factors, and any constitutional challenges to the calculation and imposition of any term of imprisonment, fine, order of forfeiture, order of restitution, and term or condition of supervised release) except as follows:

  i. The Defendant reserves the right to appeal any sentence that exceeds the statutory maximum.

c. The Defendant waives any and all rights under the Freedom of Information Act relating to the investigation and prosecution of the above-captioned matter and agrees not to file any request for documents from this Office or any investigating agency.

## Restitution

11. The Defendant agrees to the entry of a restitution order for the foreseeable amount of the losses sustained by the victims of the fraudulent scheme in which the Defendant participated, which the parties agree is $1,171,314.11. The Defendant agrees that, pursuant to 18 U.S.C. §§ 3663 and 3663A and §§ 3563(b)(2) and 3583(d), the Court may order restitution of the full amount of the actual, total loss caused by the offense conduct set forth in the factual stipulation. The total amount of restitution shall be due immediately and shall be ordered to be paid forthwith. Any payment schedule imposed by the Court establishes only a minimum obligation. Defendant will make a good faith effort to pay any restitution. Regardless of Defendant's compliance, any payment schedule does not limit the United States' ability to collect additional amounts from Defendant through all available collection remedies at any time. The Defendant further agrees that the Defendant will fully disclose to this Office, the probation officer, and to the Court, subject to the penalty of perjury, all information (including but not limited to copies of all relevant bank and financial records) regarding the current location and prior disposition of all funds obtained as a result of the criminal conduct set forth in the factual stipulation. The Defendant further agrees to take all reasonable steps to retrieve or repatriate any such funds and to make them available for restitution. If the Defendant does not fulfill this provision, it will be considered a material breach of this agreement, and this Office may seek to be relieved of its obligations under this agreement.

## Forfeiture

12. The Defendant understands that the Court will enter an order of forfeiture as part of the Defendant's sentence, and that the order of forfeiture may include assets directly traceable to the offense, substitute assets, and/or a money judgment equal to the value of the property derived from, or otherwise involved in, the offenses.

13. Specifically, but without limitation on the Government's right to forfeit all property subject to forfeiture as permitted by law, the Defendant agrees to forfeit to the United States all of the Defendant's right, title, and interest in items that constitute money, property, and/or assets



derived from or obtained by the Defendant as a result of, or used to facilitate the commission of, the Defendant's illegal activities. Specifically as a consequence of the Defendant's plea of guilty to Counts 1 and 2 charging violations of 18 U.S.C. §§ 1349 and 1343, the Court will order the forfeiture of all proceeds obtained by the Defendant or retained as a result of the fraudulent scheme in which the Defendant participated.

14. The Defendant agrees to consent to the entry of an order of forfeiture for the property described herein and waives the requirements of Federal Rules of Criminal Procedure 11(b)(1)(J), 32.2, and 43(a) regarding notice of the forfeiture in the charging instrument, advice regarding forfeiture during the change of plea hearing, announcement of the forfeiture at sentencing, and incorporation of the forfeiture in the judgment.

15. The Defendant agrees to assist fully in the forfeiture of the above property. The Defendant agrees to disclose all assets and sources of income, to consent to all requests for access to information related to assets and income, and to take all steps necessary to pass clear title to the forfeited assets to the United States, including executing all documents necessary to transfer such title, assisting in bringing any assets located outside of the United States within the jurisdiction of the United States, and taking whatever steps are necessary to ensure that assets subject to forfeiture are made available for forfeiture.

16. The Defendant further agrees to waive all constitutional, legal and equitable challenges (including direct appeal, habeas corpus, or any other means) to any forfeiture carried out in accordance with this plea agreement on any grounds, including that the forfeiture constitutes an excessive fine or punishment. The Defendant also agrees not to challenge or seek review of any civil or administrative forfeiture of any property subject to forfeiture under this agreement, and will not assist any third party with regard to such challenge or review or with regard to the filing of a petition for remission of forfeiture.

## Defendant's Conduct Prior to Sentencing and Breach

17. Between now and the date of the sentencing, the Defendant will not engage in conduct that constitutes obstruction of justice under U.S.S.G. § 3C1.1; will not violate any federal, state, or local law; will acknowledge guilt to the probation officer and the Court; will be truthful in any statement to the Court, this Office, law enforcement agents, and probation officers; will cooperate in the preparation of the presentence report; and will not move to withdraw from the plea of guilty or from this agreement.

18. If the Defendant engages in conduct prior to sentencing that violates the above paragraph of this Agreement, and the Court finds a violation by a preponderance of the evidence, then: (i) this Office will be free from its obligations under this agreement; (ii) this Office may make sentencing arguments and recommendations different from those set out in this agreement; and (iii) in any criminal or civil proceeding, this Office will be free to use against the Defendant all statements made by the Defendant and any of the information or materials provided by the Defendant, including statements, information, and materials provided pursuant to this agreement, and statements made during proceedings before the Court pursuant to Rule 11 of the Federal Rules of Criminal Procedure. A determination that this Office is released from its obligations under this



agreement will not permit the Defendant to withdraw the guilty plea. The Defendant acknowledges that the Defendant may not withdraw the Defendant's guilty plea if the Court finds that the Defendant breached the agreement.

### Court Not a Party

19.   The Court is not a party to this agreement. The sentence to be imposed is within the sole discretion of the Court. The Court is not bound by the Sentencing Guidelines stipulation in this agreement. The Court will determine the facts relevant to sentencing. The Court is not required to accept any recommendation or stipulation of the parties. The Court has the power to impose a sentence up to the maximum penalty allowed by law. If the Court makes sentencing findings different from those stipulated in this agreement, or if the Court imposes any sentence up to the maximum allowed by statute, the Defendant will remain bound to fulfill all of the obligations under this agreement. Neither the prosecutor, defense counsel, nor the Court can make a binding prediction, promise, or representation as to what guidelines range or sentence the Defendant will receive. The Defendant agrees that no one has made such a binding prediction or promise.

### Entire Agreement

20.   This letter, together with the Sealed Supplement, constitutes the complete plea agreement in this case. This letter, together with the Sealed Supplement, supersedes any prior understandings, promises, or conditions between this Office and the Defendant. There are no other agreements, promises, undertakings, or understandings between the Defendant and this Office other than those set forth in this letter and the Sealed Supplement. No changes to this agreement will be effective unless in writing, signed by all parties and approved by the Court.

If the Defendant fully accepts each and every term and condition of this agreement, please sign and have the Defendant sign the original and return it to me promptly.

Very truly yours,

Robert K. Hur
United States Attorney

_____
Peter J. Martinez
Assistant United States Attorney

I have read this Agreement, including the Sealed Supplement, and carefully reviewed every part of it with my attorney. I understand it and I voluntarily agree to it. Specifically, I have reviewed the Factual and Advisory Guidelines Stipulation with my attorney and I do not wish to change any part of it. I am completely satisfied with the representation of my attorney.

_____      _____
Date                                                 William Hickey, Defendant

I am the Defendant's attorney. I have carefully reviewed every part of this Agreement, including the Sealed Supplement, with the Defendant. The Defendant advises me that the Defendant understands and accepts its terms. To my knowledge, the Defendant's decision to enter into this Agreement is an informed and voluntary one.

9/9/19                                          _____
Date                                                 Paul Enzinna, Counsel for Defendant

9



## ATTACHMENT A

## STIPULATION OF FACTS

*The undersigned parties stipulate and agree that if this case had proceeded to trial, this Office would have proven the following facts beyond a reasonable doubt. The undersigned parties also stipulate and agree that the following facts do not encompass all of the evidence that would have been presented had this matter proceeded to trial.*

The Defendant, William Francis Hickey III, was a resident of Elkton Maryland. He was the managing member of Hickey Consulting LLC and the president of Latino Consulting, LLC. Both businesses were headquartered in Baltimore, Maryland.

The Defendant maintained four bank accounts with Wells Fargo Bank, in the name of Hickey Consulting LLC, with account numbers ending in 2690, 4507, 4861, and 4887. He opened those accounts on March 7, 2017.

The Defendant maintained a bank account with Wells Fargo Bank, in the name of Latino Consulting LLC, with account number ending in 9036. He opened this account on April 9, 2016.

### Transportation of Goods by Logistical Brokers and Trucking Companies

The Defendant participated in what is known in the trucking industry as a "double brokering" fraud scheme. In the trucking industry, brokers, or logistical brokers, are companies or individuals that are hired by shippers of goods to arrange for transportation of the goods by trucking companies. When a broker is hired by a shipper, it typically uses one of several Internet-based "load boards" to solicit bids from trucking companies that are available and willing to transport a particular load.

When a trucking company bids on a load, it typically provides the broker with contact information, such as an email address and telephone number, as well as proof of insurance, W-9 and Department of Transportation licensing forms. If a trucking company wins a bid, it is hired by the broker to transport a load to a particular destination at a particular time.

Brokers pay trucking companies for transporting loads by issuing "truck industry checks," including Comdata, EFS, T-Check, and/or Fleet Over the Road checks. Trucking companies and their drivers typically possess books containing blank versions of these checks. After a broker hires a trucking company to transport a particular load, it will make payment to the trucking company in two steps.

First, after the trucking company has picked up a load, the broker makes a "fuel advance" payment to the trucking company. The broker makes this payment by providing a numerical code, referred to in the trucking industry as an "express code," which the trucking company uses to populate a blank check from its book of truck industry checks. The check can be deposited into a bank account or cashed at a truck stop or check-cashing establishment.

10



Second, after the trucking company has delivered the load, the broker makes a final payment by providing the trucking company with a second express code, which the trucking company uses to populate another truck industry check, which it subsequently cashes or deposits, as described above.

### The Conspiracy and Scheme to Defraud

The Defendant admits that beginning in or about May 2016 and continuing until on or about January 31, 2019, he knowingly and willfully conspired and agreed with others, including a co-conspirator in Pakistan, to knowingly and willfully devise and execute, and attempt to devise and execute, a scheme and artifice to defraud logistical brokers and trucking companies, and to obtain money and property by means of materially false and fraudulent pretenses, representations, and promises.

Specifically, the Defendant admits that he and his co-conspirators obtained truck industry checks from brokers by posing as legitimate trucking companies; entering into agreements with brokers to transport a load; re-brokering, or "double brokering," the same load to a real trucking company; and then seeking payment from the brokers for transportation services that they (*i.e.*, the members of the conspiracy) had not in fact provided.

The conspiracy operated as follows. Members of the conspiracy made contact with brokers that were soliciting bids from trucking companies on Internet load boards. When contacting brokers, members of the conspiracy held themselves out as legitimate trucking companies. They did so by providing the brokers with fraudulent documents, including fraudulent proof of insurance, W-9, and Department of Transportation licensing forms, as well as fraudulent email addresses and telephone numbers.

When members of the conspiracy were hired by brokers to transport a particular load, they did not transport the load themselves. Instead, they re-brokered, or "double-brokered," the same load by posing as a legitimate broker and soliciting bids on an Internet load board from legitimate trucking companies that were willing to transport the load. When communicating with interested trucking companies, members of the conspiracy used fraudulent email addresses and telephone numbers. They then hired a legitimate trucking company to transport the load.

After the legitimate trucking company had picked up the load, members of the conspiracy contacted the original broker, informed the broker that the load had been picked up, and requested an express code for a fuel advance payment. They then used the express code to populate, and subsequently cash and deposit, a truck industry check. In some cases, members of the conspiracy also requested a second express code from the original broker after the load had been delivered, which they then used to populate, and subsequently cash or deposit, a second truck industry check.

The Defendant admits that he was one of multiple individuals who cashed and deposited truck industry checks issued by defrauded broker victims in connection with the scheme described above. The Defendant deposited 1,010 truck industry checks with an aggregate value of $1,171,314.11 into the accounts he maintained at Wells Fargo Bank in the name of Hickey



Consulting LLC and Latino Consulting LLC. The Defendant knew that the checks had been fraudulently obtained by his co-conspirators.

With respect to Count 2, the Defendant admits that on February 28, 2018, he used a cellular telephone to exchange encrypted messages with a co-conspirator in Pakistan. The Defendant asked the co-conspirator to send him "more codes," *i.e.*, express codes obtained from defrauded broker victims. The co-conspirator sent the defendant an express code, 36758131858051; as well as an amount, $1,000; which both corresponded to a fuel advance payment that members of the conspiracy had fraudulently obtained from a broker called SPC Transport. The Defendant used the express code to populate a Comdata truck industry check, which he subsequently deposited into the bank account that he maintained at Wells Fargo Bank in the name of Hickey Consulting LLC. The depositing of the check caused an interstate wire communication from a Wells Fargo branch location in Baltimore, Maryland to a Wells Fargo computer server in Shoreview, Minnesota.

SO STIPULATED:

_____
Peter J. Martinez
Assistant United States Attorney

_____
William Hickey
Defendant

_____
Paul Enzinna
Counsel for Defendant